**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM DOUGLAS,

      Petitioner,                Civil Action No. 2:06-CV-13200

v.                              HONORABLE GEORGE CARAM STEEH
                                   UNITED STATES DISTRICT JUDGE

KEN McKEE,

      Respondent,
_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

William Douglas, ("petitioner"), presently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Michael Skinner, petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the Court will **DENY** the petition for writ of habeas corpus.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner's counsel has provided a detailed statement of facts in the petition for writ of habeas corpus. Respondent has not filed an answer to the petition or otherwise disputed the allegations contained in the petition. The Court

1

will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).

Christina King testified that she was the victim's girlfriend. On January 22, 1999, petitioner, the victim, and several other persons were in an apartment building in Detroit. An argument about money broke out between several individuals. At some point, King observed the victim on his knees while petitioner was standing in front of him pointing a gun. King observed the victim hand money over to an individual named "Billy." King testified that the victim then attempted to grab the gun from petitioner, whereupon King observed petitioner shoot the victim in the chest after threatening to shoot the victim. After the shooting, King observed the individual named "Billy" run down the stairs and drive off in a car that was waiting out front. She also testified that petitioner was drunk on the night of the shooting.

On cross examination, King acknowledged that crack cocaine was being sold from the apartment where the shooting occurred. King further acknowledged that she and other women were conducting acts of prostitution from this apartment, and that the victim would receive money from her and the other women based on their prostitution activities. King further admitted that she had been high on crack cocaine that night because she had been continuously

smoking the drug.  King agreed that petitioner was intoxicated on the night of the shooting.

Officer Jose Ortiz testified that on January 22, 1999, he received a police run to Saratoga Hospital.  Officer Ortiz later went to the apartment where the shooting occurred and spoke to the victim's daughter and brother.  Ortiz also testified that he spoke with Ms. King, who informed him that the victim had been shot by an individual named "Billy."

Richard Johnson testified that he was present at the apartment at the time of the shooting.  Johnson observed petitioner, an individual he identified as "Gee", the victim, and a couple of women inside the residence talking.  Johnson gave some money to the victim to purchase some drugs.  Johnson later observed petitioner in the bathroom throwing up.  Petitioner then came out of the bathroom while pointing a gun at "Gee's head."  At this point, Johnson observed the victim on his knees while petitioner demanded money from him.  Johnson noticed the victim pass a black pouch containing drugs and money to petitioner.  The victim then jumped up and rushed at petitioner in an apparent attempt to grab the gun from petitioner, whereupon Johnson heard a gunshot and observed the victim bleeding from the chest.  Johnson admitted that he had been previously convicted of larceny from a building and a theft type of offense and had been in prison for drugs on a prior occasion.

Investigator Richard Buyse testified that he interviewed a witness named

Tara Wright about the incident, whereupon she indicated that there had been an argument between petitioner and the victim, and that the victim had been shot in the chest area after he attempted to rush petitioner in an attempt to grab the gun.

Officer David Jakeway testified that he arrested petitioner in a party store, and recovered a handgun from his waistband. Jakeway indicated that $1,000 was also recovered from petitioner.

Investigator Milton Kennedy testified that he was the officer in charge of the case. Investigator Kennedy indicated that when he questioned petitioner following his arrest, he extracted a "partial statement" from him. However, after informing Kennedy of his whereabouts on January 22, 1999, petittioner refused to answer further questions.

Petitioner's conviction was affirmed on appeal. *People v. Douglas,* No. 225214 (Mich.Ct.App. December 11, 2001); *lv. den.* 467 Mich. 873; 653 N.W. 2d 401 (2002). Petitioner thereafter filed a post-conviction motion for relief from judgment, which was denied by the trial court. The Michigan appellate courts denied petitioner leave to appeal. *People v. Douglas,* No. 262395 (Mich.Ct.App. December 6, 2005); *lv. den.* 475 Mich. 885, 715 N.W.2d 891 (2006).

Petitioner filed his *pro se* habeas application on July 10, 2006. On July 25, 2006, the Court ordered respondent to file a responsive pleading by January 22, 2007. On August 14, 2006, Michael Skinner filed an appearance on petitioner's behalf. On January 23, 2007, the Court granted respondent's motion for

4

enlargement of response time, giving respondent thirty days from receipt of petitioner's counsel's amended brief to file a response. On March 5, 2007, petitioner's counsel filed a supplemental brief in support of the petition for writ of habeas corpus. On May 23, 2007, respondent filed the Rule 5 materials with this Court, but failed to file an answer to the petition for writ of habeas corpus. On June 21, 2007, this Court issued an order requiring respondent to file an answer to the petition within thirty days of the order. To date, respondent has neither filed an answer to the petition for writ of habeas corpus, nor have they filed any motions for an additional enlargement of time.

Petitioner seeks habeas relief on the following four grounds: [1]

I. The trial court denied defendant his due process rights by refusing to instruct on the accident of defense.

II. Defendant was denied his constitutional rights to due process and a fair trial, where the prosecution elicited evidence in its case-in-chief of defendant's post-arrest, post-*Miranda* invocation of his constitutional right to silence.

III. The trial court erred in giving a flight instruction where there was no evidence to support it.

IV. Defendant Douglas was denied his constitutional right to present

---

[1] Petitioner initially raised fourteen claims for relief in his *pro se* habeas petition. Attorney Michael Skinner subsequently filed a supplemental brief in support of the petition for writ of habeas corpus on March 5, 2007, in which he only briefed four of the claims raised by petitioner in his original petition. On November 29, 2007, Magistrate Judge R. Steven Whalen issued an order for clarification, in which he asked counsel to clarify whether petitioner wished to advance all fourteen of the claims raised in his initial petition or only the four claims that were discussed in the supplemental brief filed by counsel. On January 3, 2008, counsel filed a response to the order for clarification, in which he indicated that petitioner wished to advance only the four claims that were discussed in the brief filed by counsel and was waiving the other claims that were raised in his original petition.

a defense and to the effective assistance of counsel under the Sixth and Fourteenth Amendments where his attorney failed to present the testimony of Jason Brown, even though he was present at court and was willing to testify to evidence that the main witnesses in this case committed perjury when they implicated the Defendant.

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent

6

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. By failing to respond to the petition for writ of habeas corpus, respondent has waived any procedural defenses to the petition.**

The Court initially notes that respondent has failed to file a response to the petition for writ of habeas corpus, despite being given several opportunities to do so. Petitioner, however, is not entitled to habeas relief because of respondent's failure to file an answer in this case, because to do so "would be tantamount" to granting a default judgment to petitioner in this case, which is a form of relief unavailable in habeas proceedings. *See Alder v. Burt,* 240 F. Supp. 2d 651, 677 (E.D. Mich. 2003)(citing to *Allen v. Perini*, 424 F. 2d 134, 138 (6th Cir. 1970)); *See also Gordon v. Duran,* 895 F. 2d 610, 612 (9th Cir. 1990)(failure of state to respond to five of eight claims raised in habeas petition did not entitle habeas petitioner to default judgment on those claims). While this Court believes that respondent's failure to file an answer in this case demonstrates a lack of respect for the Court, as well as a lack of regard for the gravity of the matters raised in this case, *See Carpenter v. Vaughn,* 888 F. Supp. 635, 648 (M.D. Pa. 1994), such failure is not a basis to grant habeas relief to petitioner, because the burden of proof in a habeas proceeding is on the petitioner. *See Allen,* 424 F. 2d at 138 (petitioner not entitled to default judgment because petitioner has burden

of establishing that his custody is in violation of the U.S. Constitution).

However, because the respondent has failed to file a timely answer in this case, and has failed to advance any good cause for failing to do so, this Court rules that respondent has waived the right to advance any procedural defenses to the petition, including the defenses of procedural default and statute of limitations. *See Burgess v. Bell,* 555 F. Supp. 2d 855, 858 (E.D. Mich. 2008). "Rapid adjudication of habeas petitions is important because...the writ of habeas corpus exists so that people wrongly detained may obtain freedom." *Wilkerson v. Jones,* 211 F. Supp. 2d 856, 860 (E.D. Mich. 2002). Because respondent has not timely filed an answer in this case, this Court shall proceed to consider the habeas petition without reference to any untimely pleadings that respondent may submit. *Id.*

### B. Claims #1 and # 3. The jury instruction claims.

The Court will consolidate petitioner's two jury instruction claims for judicial clarity. In his first claim, petitioner contends that the trial court erred in failing to give an instruction on an accident defense. In his third claim, petitioner contends that the trial court erred in giving an instruction on flight, when there was no evidence to support such an instruction.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct

appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).

Petitioner first contends that the trial court erred in failing to instruct the jury on the defense of accident.

The Michigan Court of Appeals rejected petitioner's claim, on the ground that there was no evidentiary support for petitioner's accidental discharge theory. The Michigan Court of Appeals indicated that the evidence at trial established that petitioner ordered the victim to get on his knees, pointed a gun at him, and demanded his money. When the victim begged for his life, petitioner responded that he "didn't give a f____". When the victim stood up and lunged at petitioner in an attempt to grab the gun, petitioner said either "I'll shoot you" or "I'll kill you", then shot the victim once in the chest. The Michigan Court of Appeals further noted that although petitioner claimed that the gun discharged during a struggle for the gun, there was no evidence that the victim touched either the weapon or petitioner. Because the evidence demonstrated that petitioner intentionally shot the victim, the Michigan Court of Appeals concluded that petitioner was not entitled to an instruction on the defense of accident. *Douglas,* Slip. Op. at * 2.

A defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "[A] necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow,* 288 F. 3d 846, 852 (6th Cir. 2002). A defendant is therefore entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). However, a conviction will not be overturned even on direct appeal for refusal to give a requested jury charge unless that instruction represents a theory of the defense with a basis in the record that would lead to an acquittal. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 604 (E.D. Mich. 2001).

In the present case, the testimony at trial indicated that petitioner stated that he intended to shoot or to kill the victim before the shot was fired. (See Tr., 12/8/1999, pp. 148-151, Tr. 12/9/1999, p. 51). Because the evidence in this case established that petitioner intentionally shot the victim and that the gun did not discharge by accident, the trial court's failure to instruct the jury on the defense of accident did not deprive petitioner of a fair trial, so as to entitle him to habeas relief. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 832 (E.D. Mich. 2002).

10

Petitioner is not entitled to habeas relief on his first claim.

In his third claim, petitioner contends that the trial court erred in giving the jury a flight instruction, CJI 2d 4.4. The Michigan Court of Appeals rejected this claim, noting that such an instruction was supported by evidence that when petitioner was arrested, he broke free and fled. *Douglas,* Slip. Op. at * 2.

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. *Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990)(internal citations omitted). Thus, the giving of a flight instruction did not violate petitioner's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations as to whether petitioner did, in fact, attempt to flee the scene and if so, what state of mind such flight evinced. *See Burton v. Renico,* 391 F. 3d 764, 778 (6th Cir. 2004). Petitioner is not entitled to habeas relief on his third claim.

### C. Claim # 2. The post-Miranda silence claim.

Petitioner next contends that he was denied his rights to due process and a fair trial when Investigator Kennedy testified regarding his post-arrest, post-*Miranda* silence. Investigator Kennedy testified that after petitioner was advised of his *Miranda* warnings, he agreed to make a statement to the police, in which he claimed that he was at his sister's house on the date of the shooting. Kennedy testified that when petitioner was asked if he knew the victim, petitioner

responded, "Yes, I don't want to talk anymore."

The Michigan Court of Appeals rejected petitioner's claim, because there was no evidence that the prosecutor intentionally elicited the reference to petitioner's post-*Miranda* silence to use against him, since the prosecutor never directly asked the officer whether petitioner had invoked his right to remain silent. Further, the prosecutor never encouraged the jurors to draw any negative inferences from petitioner's silence. The Michigan Court of Appeals concluded that the isolated, unsolicited reference to petitioner's post-*Miranda* silence did not violate petitioner's right to due process. *Douglas,* * at 2.

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *See also Gravley v. Mills*, 87 F. 3d 779, 786 (6th Cir. 1996). However, a single mention of a criminal defendant's post-arrest silence does not violate the defendant's due process rights when the prosecution does not specifically and expressly attempt to use the silence to impeach the defendant. *See U.S. v. Stubbs,* 944 F. 2d 828, 835 (11th Cir. 1991). Because the prosecutor made no specific inquiry about petitioner's post-arrest silence and never mentioned it again in her closing argument, there was no *Doyle* violation. *Id.*

Moreover, a violation of *Doyle* can be harmless error. *See Hayton v. Egeler,* 555 F. 2d 599, 603-04 (6th Cir. 1977). On federal habeas review of a

12

state court conviction, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In light of the fact that several witnesses testified that they witnessed petitioner shoot the victim, there is no reasonable probability that the isolated reference to petitioner's post-*Miranda* silence influence the jury's decision. Accordingly, petitioner is not entitled to habeas relief on his second claim. *See Billingslea v. Jackson,* 83 Fed. Appx. 33, 41 (6th Cir. 2003).

### D. Claim # 4. The ineffective assistance of counsel claim.

In his fourth claim, petitioner contends that his trial counsel was ineffective for failing to call as a defense witness, Jason Brown, who would allegedly testify that Richard Johnson and Christina King both informed Brown that they committed perjury at petitioner's trial. Petitioner has attached to his brief in support of his petition for writ of habeas corpus an affidavit from Jason Brown. In this affidavit, Brown indicates that Johnson and King both indicated that petitioner never fired the weapon at the victim, as their trial testimony suggested, but that the gun discharged accidentally when petitioner attempted to disarm the victim after the victim struck petitioner with the gun. The witnesses allegedly told Brown that a robbery never occurred and that King made up the story that petitioner took the victim's money. Brown claims that he personally informed petitioner's trial counsel about this information well in advance of trial, but that he

was never called as a witness.  Petitioner raised this claim for the first time in his post-conviction motion for relief from judgment.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

A federal court must grant an evidentiary hearing to a habeas corpus applicant if:

(1) the merits of the factual dispute were not resolved in a state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;
(3) the fact finding procedure in state court was not adequate to afford a

14

full and fair hearing;
(4) there is a substantial allegation of newly discovered evidence;
(5) material facts were not adequately developed at a state court hearing; or
(6) for any reason it appears that state trier of fact did not afford applicant a full and fair fact hearing.

*Townsend v. Sain*, 372 U.S. 293, 313 (1963); 28 U.S.C.A. § 2243

One of the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) states that if an applicant for a writ of habeas corpus has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

(A) the claim relies on:

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.§ 2254 (e)(2).

Under the opening clause of § 2254 (e)(2), a failure to develop the factual basis of a claim by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence for purposes of the opening clause of this subsection of the AEDPA depends upon whether the

prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts would have been successful. *Id.* at 435. Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.*

In the present case, petitioner's direct appeal ended on September 24, 2002, when the Michigan Supreme Court denied petitioner leave to appeal following the affirmance of his conviction by the Michigan Court of Appeals. Brown's affidavit is signed and dated June 11, 2003. In the affidavit, Brown claims that he informed petitioner's trial counsel at the time of petitioner's trial in 1999 that he was willing to testify on petitioner's behalf. In the third paragraph of his affidavit, Brown indicates that trial counsel had told Brown that he did not want to call him to testify, because Brown had not witnessed the incident. According to Brown, "Mr. Douglas disagree"(sic)[with that decision], reflecting that petitioner was aware at the time of trial that Brown wished to testify on his behalf.

In the present case, petitioner has offered this Court no argument as to why his ineffective assistance of trial counsel claim was not presented as part of his direct appeal. Petitioner has not attempted to show that the factual predicate to his ineffective assistance of counsel claim involving the failure to present Brown as a witness could "not have been previously discovered through the

exercise of due diligence," and his brief has attempted no such showing. Therefore, petitioner is not entitled to an evidentiary hearing on this claim. *See Martin v. Mitchell,* 280 F.3d 594, 615 (6th Cir. 2002).

Moreover, the Court notes that Jason Brown was an inmate at one of the prisons in Ionia, Michigan at the time that he signed this affidavit. The only evidence that he would offer concerning the witnesses would be hearsay. Because the only evidence that petitioner offers in support of his ineffective assistance of counsel claim is hearsay and is not credible, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim. *See Arredondo v. U.S.,* 178 F.3d 778, 782-83 (6th Cir. 1999); *Johnson v. United States*, 239 F.2d 698, 699 (6th Cir. 1956). Accordingly, petitioner is not entitled to habeas relief on his fourth claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a

district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of petitioner's claims to be debatable or that they should receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

Dated: August 18, 2008

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 18, 2008, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk